UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BIANCA E.,

          Plaintiff,

    v.

LELAND DUDEK, et al.,

          Defendants.

Case No. 25-cv-02891-KAW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 9, 13

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for further proceedings.  Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment.

## I.   BACKGROUND

Plaintiff filed for Title II benefits on May 11, 2022, asserting disability beginning on January 2, 2020.  (AR 748.)  The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration.  (AR 655, 667.)  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"); the hearing was held on December 6, 2023.  (AR 572, 673.)

Following the hearing, the ALJ denied Plaintiff's application on March 15, 2024.  (AR 549-66)  A request for review of the ALJ's decision was filed on May 3, 2024.  (AR 745-46.)  The Appeals Council denied Plaintiff's request for review on February 6, 2025.  (AR 1.)

On March 28, 2025, Plaintiff commenced this action for judicial review pursuant to 42

U.S.C. § 405(g).  (Compl., Dkt. No. 1.)  Plaintiff filed the motion for summary judgment on June 30, 2025.  (Pl.'s Mot., Dkt. No. 9.)  Defendant filed an opposition and cross-motion for summary judgment on August 29, 2025.  (Def.'s Opp'n, Dkt. No. 13)  Plaintiff filed a reply on September 9, 2025.  (Pl.'s Reply, Dkt. No. 14.)

## II.    LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under SSA regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.*  If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b).  At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721.  If the answer is no, the claimant is not disabled. *Id.*  If the answer is yes, the Commissioner proceeds to step three and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d).  If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional

United States District Court
Northern District of California

capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f).  RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner at step five. *Id.* at 954.

### III.    DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds: (1) the ALJ erred in evaluating Plaintiff's mental impairments at step three, (2) the ALJ erred in rejecting Plaintiff's testimony, and (3) the ALJ erred in evaluating the medical opinions.

### A.    Step Three

Plaintiff argues that the ALJ erred in finding that Plaintiff's schizophrenia and anxiety did not satisfy either the Paragraph B or C criteria.  (Pl.'s Mot. at 10-11.)  To meet the listings of 12.03 for schizophrenia and 12.06 for anxiety disorders,[1] Plaintiff's impairments or combination of impairments must either: (1) meet a marked limitation in two, or an extreme limitation in one of four specified areas of mental functioning to satisfy Paragraph B, or (2) be a "serious and persistent mental disorder" meeting Paragraph C.  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(A)(2)(b)-(c).

#### a.   Paragraph B Criteria

The ALJ found that Plaintiff had "moderate" limitations in all four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  (AR

---

[1] Plaintiff notes that the ALJ considered whether Plaintiff met the listing 12.04 (depression and bipolar disorder) instead of 12.06 (anxiety), which appears to be error.  (Pl.'s Mot. at 11.)  Plaintiff does not suggest this error is prejudicial.

United States District Court
Northern District of California

554-55.) Plaintiff argues that the ALJ erred as to the latter three categories. (Pl.'s Mot. at 12.)

### 1.  Interacting with Others

In finding that Plaintiff had a moderate limitation in interacting with others, the ALJ pointed to Plaintiff's Function Report, in which she stated that she did not have problems getting along with others but had to be mindful of how she was feeling and take her medicine. (AR 555.) Plaintiff also stated that she spent time with others doing activities such as eating, watching TV, and cooking. The ALJ also pointed to Plaintiff's mental status examinations, which showed auditory hallucinations and dysthymic and anxious mood findings, but also showed cooperative behavior, fair eye contact, and appropriate mood and affect during other treatment. The ALJ then concluded that Plaintiff had a "significant, but not marked limitation in the ability to relate to and work with supervisors, co-workers, or the public independently, appropriately, effectively, and on a sustained basis." (AR 555.) The Court finds that the ALJ erred.

First, the ALJ relied on Plaintiff's Function Report, specifically where Plaintiff checked off "No" when asked if she had "any problems getting along with family, friends, neighbors, or others." (AR 774.) In that same Function Report, however, Plaintiff stated that she was "fearful being around others," that she had "social anxiety hard to interact with people it very challenging at times," and that "talking is difficult to be around others because my anxiety takes over and my brain." (AR 770, 774.) The Ninth Circuit is clear that an ALJ is "not permitted to 'cherry-pick' from those mixed results to support a denial of benefits." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Here, the ALJ's reliance on a single response in Plaintiff's Function Report, isolated from her other statements about her difficulty interacting with others, is not substantial evidence that supports the ALJ's conclusion.

Second, the ALJ considered Plaintiff's mental status exams, specifically findings of cooperative behavior, fair eye contact, and appropriate mood and affect. (AR 555.) Several of the mental status reports cited by the ALJ, however, do not support these characterizations. (*See* AR 960 February 19, 2020 visit describing Plaintiff's affect as "Fairly blunted to flat, though laughs inappropriate/out of context a couple of times"), 1512 (December 14, 2022 visit describing Plaintiff's mood as "worried about the voices.").) Further, as with Plaintiff's Function Report, the

United States District Court
Northern District of California

ALJ relied on certain mental status exams while ignoring the numerous other mental status exams that included abnormal mood and affect. (*See, e.g.*, AR 448 (January 1, 2024 visit describing Plaintiff's affect as "flat"),  523 (April 22, 2024 visit describing Plaintiff's mood as "depressed, anxious") 929 (May 26, 2020 visit describing Plaintiff's mood as "anxiety"), 970 (January 14, 2020 visit describing Plaintiff's mood as "Fairly blunted to flat, though laughs inappropriately/out of context a couple of times"), 1230 (January 21, 2022 visit describing Plaintiff's mood as "uncomfortable" and "affect sounds mildly inappropriate at times"), 1289 (July 6, 2022 visit describing Plaintiff's mood as "anxious"), 1514 (August 18, 2022 visit describing Plaintiff's mood as "worried" and affect as "anxious").)  By ignoring the numerous mental status exams that contradicted the ALJ's finding, the ALJ improperly "cherry-picked" from the medical evidence.

Finally, the ALJ relied on Plaintiff's statement that she ate, watched TV, and cooked with other people. (AR 555.)  Plaintiff argues that these activities do not show whether an individual is able to perform appropriate social interactions on a sustained basis in a work setting. (Pl.'s Mot. at 14.)  Defendant, in turn, does not address the issue. (*See* Def.'s Opp'n at 2-3.)  The Court agrees that the ALJ erred by failing to provide any explanation for how these activities demonstrate Plaintiff's ability to interact with others.  The Ninth Circuit is clear that an "ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1103 (9th Cir. 2014).

Accordingly, the Court finds the ALJ erred in finding Plaintiff had moderate limitations in interacting with others.

### 2.    Concentration, Persistence, or Pace

The ALJ found that Plaintiff had a moderate limitation in concentration, persistence, or pace. (AR 555.)  The ALJ found that although Plaintiff reported problems concentrating, she was able to finish what she started and had problems when she had auditory hallucinations. (AR 555.) The ALJ acknowledged that Plaintiff's mental status exams had "some positive findings in thought content," but that they also showed generally logical and coherent though process. Finally, the ALJ pointed to Plaintiff's psychological consultative exam with Tiadora Kim, Psy.D.,

United States District Court
Northern District of California

United States District Court
Northern District of California

where she had only mildly impaired attention and an effectively normal MMSE score, and reported being able to drive and shop. (AR 555.)

The Court finds that the ALJ could reasonably rely on the psychological consultative exam with Dr. Kim. On September 19, 2022, Dr. Kim performed a complete mental evaluation, during which they found Plaintiff's concentration was not impaired. (AR 1505.) Dr. Kim opined that Plaintiff's ability to maintain concentration, attention, and persistence during a normal workday was "mildly impaired," and that Plaintiff would require slight assistance and support to maintain concentration, attention, and persistence. (AR 1509.) Plaintiff does not challenge Dr. Kim's findings, but instead complains that Dr. Kim's exam only concerned whether Plaintiff had a cognitive disorder and did not reflect whether her schizophrenia could cause a serious limitation in her ability to maintain concentration or pace. (Pl.'s Mot. at 16.) In support, Plaintiff cites an unpublished Ninth Circuit case, which found that the ALJ improperly relied on scores focused on cognitive functioning instead of social functioning. *Delegans v. Colvin*, 584 Fed. Appx. 328, 331 (9th Cir. 2014). Plaintiff, however, fails to explain how Dr. Kim did not consider her schizophrenia, which Dr. Kim acknowledged in their opinion, as well as why their opinion about Plaintiff's ability to maintain concentration, attention, and persistence concerns social functioning instead of cognitive functioning. Thus, the Court finds no error.

### 3. Adapting or Managing Oneself

The ALJ found that Plaintiff had a moderate limitation in adapting or managing oneself. (AR 555.) The ALJ acknowledged that Plaintiff stated she did not handle stress well and did not like change, but pointed to her "substantially normal" mental status examinations. (AR 555.) The ALJ also noted that Plaintiff had reported no problems with personal care, engaging in hobbies and interests, and spending time with others in her Functional Report. (AR 555.)

The Court finds that the ALJ erred. Plaintiff correctly points out that the ALJ downplayed Plaintiff's mental status examinations by calling them "substantially normal." (*See* Pl.'s Mot. at 17.) Indeed, in the March 12, 2020 examination relied by the ALJ, Plaintiff was described as "jumpy/easily startled," having an "odd demeanor," having "sad and damaged" mood, having a "fairly blunted to flat [affect and] laugh[s] inappropriately at times," engaging in "rambling and

loose" thought process with "abrupt shifts in topic," "easily distracted" and "easily confused," and having "limited" insight and judgment.  (AR 947.)  She also reported having auditory hallucinations "almost every day" and paranoia.  (AR 947.)  It is entirely unclear how a mental status examination in which a patient is described as odd, sad, damaged, rambling, easily distracted and confused, and suffering from hallucinations on a daily basis is "substantially normal," even if she was appropriately groomed.  Moreover, while the ALJ pointed to two mental status exams that appeared normal, this ignores the numerous mental status examinations in which Plaintiff was described as suffering hallucinations and paranoia (AR 929, 933, 959, 961, 970, 1106, 1129, 1170, 1189, 1216, 1220, 1512, 1514, 1606), having limited insight and judgment (AR 929, 933, 961, 970, 1129, 1170, 1220, 1230), and otherwise exhibiting strange behavior such as "odd demeanor," "monotone" speech, and inappropriate laughter (AR 960, 973, 1003, 1106, 1129, 1170, 1189, 1220, 1230).

Finally, with respect to the ALJ's reliance on Plaintiff's Function Report, the ALJ pointed to Plaintiff reporting that she had no problems with personal care and engaging in hobbies and interests such as meditating, exercising, reading, watching a good movie, and spending time with others.[2]  (AR 555.)  Plaintiff argues that the ALJ failed to explain how the ability to, for example, read or "watch a good movie" would go to adapting or managing oneself, *i.e.*, the ability to regulate emotions, control behavior, or maintain well-being in a work setting independently.  (Pl.'s Mot. at 17; AR 555.)  Defendant provides no substantive response.  The ALJ's failure to provide sufficient reasoning for the Court to meaningfully review the ALJ's conclusion is error.  *See Treichler*, 775 F.3d at 1103.

Accordingly, the Court finds that the ALJ erred in finding that Plaintiff had moderate limitations in adapting or managing herself.

b.  Paragraph C

To satisfy Paragraph C, a claimant's mental disorder must be "severe and persistent" in that the claimant has a medically documented history of a disorder over a period of at least two

_____

[2] The Court notes that Plaintiff did not include spending time with others as one of her hobbies and interests.  (*See* AR 774.)

United States District Court
Northern District of California

years, and there is evidence of both: (1) medical treatment, mental health treatment, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the mental disorder, and (2) marginal adjustment, that is, the claimant has minimal capacity to adapt to changes in the environment or to demands that are not part of their daily life.

Here, there is no dispute that Plaintiff's impairments have been documented for at least two years.  The ALJ, however, found that the Paragraph C criteria were not satisfied because "Plaintiff's psychiatrist notes that she has marginal adjustment outside of a highly structured environment," which the ALJ found was "not consistent with the record, including no evidence of highly structured settings."  (AR 556.)  The ALJ also found that Plaintiff had "somewhat conservative treatment" and "quite minimal mental status examination findings and good activities of daily living."  (AR 556.)

The Court finds that the ALJ erred because it is not apparent that the ALJ actually considered the Paragraph C criteria.  Rather, the ALJ dismissed the findings of Plaintiff's treating psychiatrist, Larry A. Kean, MD, because Dr. Kean purportedly found Plaintiff had marginal adjustment outside of a highly structured environment when there was no evidence of a highly structured environment.  (AR 556.)  In support, the ALJ appears[3] to cite to where Dr. Kean checked off "Yes" in response to the question: "Is there ongoing medical treatment, mental health therapy, psychosocial support, or a highly-structured setting that diminishes signs of symptoms?" (AR 1521.)  As Plaintiff points out, a "Yes" response to this question does **not** indicate that Plaintiff was in a highly structured setting because it is an "or" question.  (Pl.'s Mot. at 19.)  Thus, the ALJ's rejection of Dr. Kean's opinion as to Paragraph C based solely on an alleged contradiction is not substantial evidence.

Additionally, Plaintiff challenges the ALJ's finding that Plaintiff's treatment was "somewhat conservative."  (Pl.'s Mot. at 18.)  To start, it is unclear how the ALJ's finding that treatment was "somewhat conservative" is relevant to the requirements of Paragraph C.  Further, Plaintiff correctly points out that treatment by a psychiatrist and antipsychotic medication is hardly

---

[3] The ALJ actually cited to AR 1520, which does not appear to address a highly-structured setting at all.  (*See* AR 555.)

United States District Court
Northern District of California

"conservative treatment." *See Michael W. v. Bisignano*, No. 2:25-cv-00635-BFM, 2026 U.S. Dist. LEXIS 9511, at *9 (C.D. Cal. Jan. 16, 2026) (finding that prescriptions of antipsychotic medication "is not considered conservative"); *Green v. Berryhill*, No. 2:17-cv-01339-APG-NJK, 2018 U.S. Dist. LEXIS 152868, at *13 (D. Nev. Aug. 20, 2018) ("The Ninth Circuit and other courts have recognized within the context of mental health conditions that the prescription of psychiatric medications is not indicative of conservative treatment."); *Quiroz v. Berryhill*, No. 8:16-cv-02127-GJS, 2018 U.S. Dist. LEXIS 25298, at *20 (C.D. Cal. Feb. 14, 2018) ("Nothing in Social Security jurisprudence requires mentally impaired claimants to be subjected to harsh treatments -- whether involuntary psychiatric hospitalizations, electroshock, or whatever other non-'routine care' the ALJ apparently believes is necessary").

Next, to the extent the ALJ relied on the "minimal mental status examinations," the Court again finds that Plaintiff's mental status examinations -- which included numerous findings that Plaintiff was suffering from hallucinations and paranoia, had limited insight and judgment, and exhibited strange behaviors -- are far from "minimal." Indeed, if the ALJ considers such examination findings to be "minimal," it is not apparent to the Court what would constitute a remarkable examination finding.

Finally, as to Plaintiff's "good activities of daily living," the ALJ again fails to explain how these activities go to the Paragraph C criteria, thus precluding meaningful review. *See Treichler*, 775 F.3d at 1103.

Accordingly, the Court finds that the ALJ erred in evaluating the Paragraph C criteria.

### B.    Plaintiff's Testimony

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony. (Pl.'s Mot. at 20.) In the absence of affirmative evidence of malingering, the ALJ may reject a claimant's testimony by offering clear and convincing reasons for doing so. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

"A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing claimant to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v.*

*Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (internal quotation omitted).  Thus, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (internal quotations omitted).

The ALJ found that the evidence was "not fully consistent with the claimant's statements about the intensity, persistence, and limiting effects of her symptoms."  (AR 560.)  The ALJ found that although Plaintiff reported psychotic symptoms, "she had little else in the way of mental status examinations."  (AR 560.)  The ALJ also found that Plaintiff's symptoms improved with treatment, and that she was able to care for chickens, read, grocery shop, go to the laundromat, and be around family.  (AR 560.)  While the ALJ acknowledged that Plaintiff testified to difficulty being around others, the ALJ found that the extent of the difficulty was "not consistent with the conservative treatment and minimal mental status examination findings."  (AR 560.)

Again, the Court finds that the ALJ's findings that Plaintiff's treatment was "conservative" and the mental status examination findings were "minimal" are unsupported by the record.  As to the activities of daily living and Plaintiff's alleged improvement[4] with treatment, Plaintiff correctly argues that the ALJ failed to explain how these activities or improvement contradicted any specific testimony by Plaintiff.  (Pl.'s Mot. at 20.)  Here, the ALJ simply stated Plaintiff had improvement and listed activities before finding that the activities were inconsistent with Plaintiff's alleged mental limitations.  (AR 560.)  Such general conclusions are insufficient.  *See Brown-Hunter*, 806 F.3d at 493; *Treichler*, 775 F.3d at 1103.

Accordingly, the Court finds that the ALJ erred in weighing Plaintiff's testimony.

### C.   Medical Opinions

Finally, Plaintiff argues that the ALJ erred in evaluating the following: (1) the February 2023 reconsideration review by E. Campbell, PhD, and (2) the July 2022 and December 2022 opinions by Dr. Kean.  (Pl.'s Mot. at 22-23.)

Under the updated regulations, the SSA "will no longer give any specific evidentiary

---

[4] The Court observes that Defendant's citations to the record of Plaintiff's improvements still show that Plaintiff suffered from auditory hallucinations, albeit with less frequency.  (Def.'s Opp'n at 6.)

United States District Court
Northern District of California

weight to medical opinions; this includes giving controlling weight to any medical opinion." 20 C.F.R. § 416.920c(a). Instead, each medical opinion's persuasiveness is evaluated based on various factors, the most important of which are "supportability" (the extent to which the medical opinion is supported by relevant and objective medical evidence) and "consistency" (the extent to which a medical opinion is consistent with evidence from other medical and nonmedical sources). *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022). While a medical source's relationship with the claimant is to be considered, "the ALJ no longer needs to make specific findings regarding these relationship factors." *Id.* An ALJ, however, "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (internal quotation omitted).

### i. Dr. Campbell

Dr. Campbell, a state agency psychologist consultant, opined that Plaintiff was capable of carrying out simple 1-2 step instructions/tasks, maintaining concentration and pace during a 40-hour workweek, interacting with co-workers and supervisors in a non-public capacity, and adapting to the usual stressors and demands of a normal workplace environment. (AR 561, 643-46.) The ALJ found that Dr. Campbell's opinion was persuasive except for the limitation of 1-2 step tasks, finding that this was "generally well supported and consistent with the quite minimal mental status examination findings and good activities of daily living." (AR 562.)

Plaintiff argues that the ALJ erred in finding that Dr. Campbell's opinion was well supported and consistent with the record. (Pl.'s Mot. at 22.) As above, the Court finds that the ALJ's assertion that the mental status examinations were "quite minimal" is unsupported by the record. Additionally, the ALJ fails to provide any connection between Plaintiff's activities and her abilities, contrary to the Ninth Circuit's requirement that an ALJ "explain how it considered the supportability and consistency factors in reaching these findings." *Woods*, 32 F.4th at 792.

Accordingly, the ALJ failed to provide an explanation supported by substantial evidence in evaluating Dr. Campbell's opinion.

**ii.    Dr. Kean**

In July 2022, Dr. Kean opined that Plaintiff would have difficulties with social functioning, would be distracted and preoccupied with delusions and hallucinations, and was unable to function in even a menial job. (AR 1108.)  The ALJ found that this opinion was not persuasive because it was unsupported by Dr. Kean's notation of chronic problems since adolescence and inconsistent with the improved mood findings and good activities of daily living. (AR 563.)  In December 2022, Dr. Kean opined that Plaintiff had minimal to moderate limitations in areas of understanding, remembering, or applying information; mostly marked limitations in areas of interacting with others; moderate to marked limitations in areas of concentration, persistence, or maintaining pace; and minimal to marked limitations in adapting or managing herself. (AR 1519-20.)  The ALJ found that this opinion was not persuasive because Dr. Kean had noted that Plaintiff had marginal adjustment outside of a highly structured environment despite no evidence of a highly structured setting. (AR 563-64.)  The ALJ further found that the opinion was internally inconsistent, with moderate and marked findings in similar areas. (AR 563-64.)  The ALJ also pointed to Plaintiff's conservative treatment, "quite minimal mental status examination findings," and activities of daily living. (AR 564.)

The Court finds that the ALJ erred.  With respect to the July 2022 opinion, the ALJ did not provide any explanation for how Dr. Kean's notation of chronic problems since adolescence failed to support his opinion that she was precluded from interacting with supervisors, coworkers, or the public. (AR 563.)  Likewise, the ALJ failed to explain how Plaintiff's improved mood findings or activities of daily living were inconsistent with Dr. Kean's opinion about Plaintiff's ability to interact with others. (AR 563.)  Thus, the ALJ failed to provide an explanation that allows for meaningful review by the Court.  *See Treichler*, 775 F.3d at 1103.

As to the December 2022 opinion, the Court has already explained that Dr. Kean did not find that Plaintiff was in a highly structured environment, that Plaintiff's treatment was not conservative, and that the suggestion of "minimal" mental status examination findings is not supported by the record.  The Court also again notes the failure to explain how the activities of daily living contradicted Dr. Kean's findings.  Similarly, the ALJ failed to provide any explanation

12

for how Dr. Kean's findings of moderate or marked findings was internally inconsistent. *See Treichler*, 775 F.3d at 1103.

Accordingly, the Court finds that the ALJ failed to provide an explanation supported by substantial evidence in rejecting Dr. Kean's opinions.

### IV.    CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment. Because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence was properly evaluated, remand is appropriate. On remand, the ALJ must properly develop the record and evaluate the evidence based on applicable law consistent with this order.

IT IS SO ORDERED.

Dated: March 24, 2026

KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

13